## BANK OF IPSWICH V. BROCK *et al.*

1. Defendant, who had executed two mortgages on his land (one in 1884 in favor of M., and one in 1887 to G.), applied to plaintiff for a loan; and plaintiff paid M's mortgage, under an agreement with defendant that he would secure a release of G.'s mortgage, and instructed the register of deeds not to discharge M.'s mortgage of record until defendant had secured such release. Defendant failed to secure the release from G., and the register of deeds discharged M.'s mortgage by mistake. *Held* that plaintiff was entitled to be subrogated to the rights of M.

2. Plaintiff, to whom defendant had applied · for a loan, agreed to pay one mortgage on defendant's land if defendant would secure the release of another mortgage on it, and, on making the payment. instructed the register of deeds not to discharge it of record until the defendant secured such release. *Held* that, where the register of deeds discharged the mortgage paid by plaintiff through mistake, plaintiff was entitled to have such discharge set aside and the record of satisfaction canceled.

3. Plaintiff was entitled to foreclose M.'s mortgage, and to a decree for the sale of the land to satisfy the debt and costs.

(Opinion filed July 11, 1900.)

Appeal from circuit court, Edmunds county; Hon. LORING E. GAFFY, Judge.

Action by the Bank of Ipswich against Neils S Brock and others. From a judgment in favor of defendants, plaintiff appeals. Reversed.

The facts are stated in the opinion.

*H. H. Potter*, for appellant.

When a mortgage is paid by one who is under no obligation to pay it, although he does not take a formal assignment of it, he is subrogated to the right of the mortgagee.  1 Jones on Mtges. § 876; Wilson v. Mayberry, 75 Wis. 191; Union Mtge Co. v. Peters, 72 Miss. 1058; Emmert v. Thompson, 49 Minn. 386; Bank v. Biersladt, 168 Ill. 618; Haverford Assn v. Fire Assn. 180 Penn. St. 522; Kisler v. Aultman, 56 Minn. 454.

*C. H. Barron* and *A. Gunderson*, for respondent.

CORSON, J.   This is an action on the part of the plaintiff for the cancellation of the record of the discharge of a mortgage, and for the foreclosure of the same.   The case was tried by the court, and it found the facts and conclusions of law in favor of the defendants and dismissed the action.   Counsel for the plaintiff and appellant prepared findings of fact in its favor, which were rejected by the trial court; and appellant, insisting that upon the undisputed evidence the findings of fact and conclusions of law should have been in its favor, moved for a new trial on the ground that the findings were not supported by the evidence, which was denied.

The undisputed facts may be briefly stated as follows: In May, 1884, one Neils S. Brock, who was the owner of certain real estate in Edmunds county, executed a mortgage to G. M. MacKenzie and Elliot H. Smith upon said property to secure the payment of a certain note bearing date May 17, 1884, for the sum of $250.   Said note and mortgage were in August, 1884, assigned to Nancy J. Minor.   Prior to September, 1887, the said Brock sold and transferred said real

estate to the defendant Christian Bungard. Said Bungard and wife on September 26, 1887, executed and delivered to the defendant John Gates two promissory notes, aggregating $650, and to secure the payment of the same executed their mortgage on the real property aforesaid, which said mortgage was made subject to said prior mortgage of $250. On or about May 26, 1889, said Bungard and wife executed and delivered to the plaintiff and appellant a mortgage upon the same property to secure the payment of their promissory note for $500, payable to plaintiff, of which the plaintiff is the owner and holder. At the time said $500 mortgage was executed to the plaintiff the defendant Bungard represented to the plaintiff that he had arranged with said Gates that his mortgage for $650 should be released, and a new mortgage given therefor, subject to the mortgage of the appellant. It was further agreed between said Bungard and the appellant that the $250 mortgage executed by said Brock to MacKenzie and Smith, and by them transferred to Nancy Minor, should be paid off out of the money so secured by the $500 mortgage. Appellant, relying upon said agreement with said Bungard, paid to the holder of the $250 mortgage foresaid the amount due thereon, and took from such holder a discharge of said mortgage, which discharge was left by the appellant with the register of deeds of said Edmunds county, with instructions not to record the same until a release of the $650 mortgage had been executed and recorded by said Gates. Said register of deeds, however, overlooking the said instructions, recorded the discharge of said Brock mortgage. The Gates mortgage has never been paid or foreclosed, and was at the commencement of this suit still owned and held by said Gates.

Upon these facts the appellant contends that it is entitled to have the discharge of the Brock mortgage for $250 canceled of record, and to be subrogated to the rights of Nancy Minor, the assignee of said mortgage, and to foreclose the same. It will be observed from the statement of facts that Gates took the $650 mortgage subject to the $250 mortgage, and that consequently he will be in precisely the same position upon the foreclosure of this mortgage by appellant that he would be if the mortgage was owned by Nancy Minor. It will be further observed that Bungard purchased the property subject to the $250 Brock mortgage, that mortgage being of record at the time of the purchase, and that he will be in precisely the same position upon the foreclosure of the mortgage by appellant that he would be had the mortgage remained the property of said Nancy Minor, and a suit had been instituted by her to foreclose the same. We are of the opinion, therefore, that upon the undisputed facts a part, at least, of the findings proposed by counsel for the appellant should have been adopted as the findings of the court, and the court erred in refusing to find the same. Among the findings so requested and refused by the trial court are the following: "(3) That, at the time of the execution of the note of $500 by Christian Bungard and wife to plaintiff, said Bungard agreed that said mortgage should be a first lien upon the premises described in the complaint, and agreed to obtain from the deferdant John Gates a release of his said mortgage." "(5) That the plaintiff, relying upon the promise of said Bungard to discharge and procure a release of the said Gates mortgage advanced to the then holder of the mortgage made by said Brock to MacKenzie and Smith the amount thereof, and took

from said holder a satisfaction of the said mortgage, expecting that the said Gates mortgage would be discharged by said Bungard, and, pending the expected discharge and release of said Gates mortgage, plaintiff delivered said satisfaction to the register of deeds of Edmunds county, with instructions not to record the same until said Gates mortgage was released and satisfied. (6) That the said register of deeds of Edmunds county, contrary to his instructions, placed said satisfaction of record." As these findings are supported by the undisputed evidence in the case, and as the same questions will probably arise on another trial, we may, for the purposes of this decision, assume that they have been found by the court, and, in that view of the case, we are of the opinion that the conclusions of law which the court was requested to state are correct. These conclusions of law are as follows: "(1) That plaintiff is entitled to be subrogated to all the rights of the original mortgagee in said mortgage sought to be foreclosed, and that plaintiff is the owner of said mortgage. (2) That plaintiff is entitled to have the satisfaction of the mortgage delivered by it to the register of deeds of Edmunds and county, which was recorded, set aside, and the record of such satisfaction canceled, and that the same be held null and void. (3) That plaintiff is entitled to a judgment and decree of foreclosure of the mortgage described in the complaint, as prayed, and a sale of said lands for the purpose of satisfying the amount thereof, together with the costs of this action, and a decree foreclosing all the interests of the defendants in said action, as prayed in said amended complaint."

The respondent, however, insists that the appellant, in paying off the Brock mortgage, was a volunteer, and being such,

it has no claim to be subrogated to the rights of the holder of that mortgage. Under the strict rule as formerly held by the courts, the contention of respondent would be entitled to great consideration. It was held in the earlier decisions that, where a party was not compelled to pay off the prior lien in order to protect himself from loss, he was regarded as a volunteer, and hence had not the right of subrogation; and where, as in this case, the appellant took a new mortgage and advanced his money thereon with full knowledge of the prior mortgage which he paid off, but of which he failed to take an assignment and only took a release, he had no remedy upon such prior mortgage. Such was the rule laid down in Sandford v. McLean, 3 N. Y. Ch. Rep. 80, 3 Paige, 117, decided by the New York court of chancery in 1832, cited and relied upon by respondent's counsel. But the courts in the later decisions have adopted a more liberal rule. Even in New York the doctorine laid down in the case of Sandford v. McLean, *supra,* has been very much modified in the later decisions. In Gans v. Thieme, 93 N. Y. 225, the court of appeals of New York says: "It is, no doubt, true, however, as the learned counsel for the respondent argues, that a volunteer cannot acquire either an equitable lien or the right of subrogation (Sandford v. McLean, 3 Paige, 122; Wilkes v. Harper, 1 N. Y. 586; *Id.,* 2 Barb. Ch. 338); but one who, at the request of another, advances his money to redeem or even to pay aff a security in which that other has an interest, or to the discharge of which he is bound, is not of that character, and, in the absence of an express agreement, one would be implied, if necessary, that it shall subsist for his use, and it will be so enforced. But the doctrine of substitution may be applied, although there is no

contract, express or implied. It may be said to rest 'on the basis of mere equity and benevolence' (Cheesebrough v. Millard, 1 Johns. Ch. 409; 1 Story, Eq. Jur. § 493), and is resorted to for the purpose of doing justice between the parties. Here the defendants have no equity. In any aspect of the case, the plaintiffs have paid a debt which the testator ought to have paid, and a mortgage to which the land was subject, under the belief, authorized by the words and acts of the legal representatives of the deceased, that they were to have a valid security upon it. It has not been given to them, and it will subserve the purposes of justice, and violate no rule of law, to subrogate them to the lien of the mortgage, as against any of the parties to this action, since their title was affected by it (Barnes v. Mott, 64 N. Y. 397, 21 Am. Rep. 625), and no wrong can be done to either by putting the plaintiffs in the place of the original creditor." In Emmert v. Thompson 49 Minn. 386, 52 N. W. 31, the supreme court of Minnesota, after commenting upon the older cases, uses the following language: But of late years, with the development of the principles upon which the doctrine is founded, the courts have been taking a broader and more commendable view of the situation of such a party, and at this time very little is left of the views expressed in the earlier cases. The better opinion now is that one who loans his money upon real-estate security, for the express purpose of taking up or discharging liens or incumbrances upon the same property, has thus paid the debt at the instance, request, and solicitation of the debtor, expecting and believing, in good faith, that his security will, of record, be substituted, in fact, in place of that which he discharges, is neither a volunteer, stranger, nor intermeddler, nor is the debt, lien, or in-

cumbrance regarded as extinguished, if justice requires that it should be kept alive for the benefit of the person advancing the money, who thereby becomes the creditor." The supreme court of Illinois, in Bank v. Bierstadt, 168 Ill. 618; 48 N. E. 161, shows quite clearly how the doctrine and principles of subrogation have been expanding in modern times. In speaking upon that subject the court says: "'Subrogation, as a principle of equity jurisprudence, is generally confined to the relation of principal and surety and guarantors, or to a case where a person is compelled to remove a superior title to that held by him in order to protect his own, and also to cases of insurers. The general principle of subrogation is confined and limited to these classes of cases. Bishop v. O'Conner, 69 Ill. 431; Borders v. Hodges, 154 Ill. 498, 39 N. E. 597. Whilst these general heads include the doctrine and principles of subrogation, that doctrine has been steadily expanding and growing in importance and extent in its application to various subjects and classes of persons. This equitable principle is enforced solely for the accomplishment of substantial justice, where one has an equity, to invoke which cannot injure an innocent person. The right of subrogation which springs from the mere fact of the payment of a debt, and which is included under the heads first above stated, is what is termed 'legal subrogation,' and exists only where included within those classes. But in addition to this principle of legal subrogation there exists another principle, which is termed 'conventional subrogation,' which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien; by which agreement he is to have an equal lien to that paid off, whereupon he is entitled

to the benefit of the security which he has satisfied with the expectation of receiving an equal lien.    Coe v. Railway Co. 31 N. J. Eq. 105; Tyrrell v. Ward, 102 Ill. 29; Association v. Thompson, 32 N. J. Eq. 133." Upton v. Hugos, 7 S. D. 476, 64 N. W. 523; Levy v. Martin, 48 Wis. 198, 4 N. W. 35; Pom. Eq. Jur. §§ 1211, 1212; Heisler v. Aultman & Co. 56 Minn. 454, 57 N. W. 1053; Wilton v. Mayberry, 75 Wis. 191, 43 N. W. 901; Trust Co. v. Peters, 72 Miss. 1058, 18 South. 497, 30 L. R. A. 829; Haverford Loan & Building Ass'n. v. Fire Ass'n. 180 Pa. St. 522, 37 Atl. 179.

We are of the opinion that under the modern doctrine of subrogation the conclusions of law requested by appellant should have been stated by the court.    In this case neither Bungard, the purchaser of the mortgaged premises, nor Gates, who took the second mortgage, will be in any manner injured by permitting the appellant to be subrogated to the rights of Nancy Minor in the Brock mortgage.    As before stated, they occupy precisely the same position and have precisely the same rights, that they would have had if the title to the mortgage had remained in said Nancy Minor. The appellant, therefore, upon the record as presented in this court, is equitably entitled, by reason of the mistake in paying off and taking a release of the Brock mortgage instead of taking an assignment of the same, to be subrogated to the original rights of said Nancy Minor, and have the release of the mortgage, which was inadvertently recorded by mistake of the register of deeds, canceled of record, and to foreclose the said mortgage.    The judgment of the court below is therefore reversed, and the findings of fact and conclusions of law are vacated and set aside, and a new trial ordered.